IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY BURNETT,** *in his own right and as* *personal representative of the estate of* *Angi Burnett, deceased, and on behalf of* *his two minor children, C.B. and T.B.,* | : | **3:07cv1490** |
| | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SWIFT TRANSPORTATION, INC.;** **SPARKS FINANCE COMPANY, INC.;** **JOHN E. JONES; LISA MATTERN;** **PATRICK C. LUDWIG; DAVIS** **TRANSFER CO., INC.; JAMES L. WHITE** **and LISA EXPRESS,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES OWENS, KEVIN OLVANY and** **TERRY BURNETT,** | : | |
| | : | |
| **Third-Party Defendants** | : | |

## MEMORANDUM

This case relates to a fatal multi-vehicle accident in the foggy morning hours of July 3, 2006 on Interstate 81. Before the court for disposition are the motions for summary judgment of Defendant Lisa Mattern (Doc. 300), Defendants Swift Transportation, Inc., Sparks Finance Company, Inc. and John E. Jones (Doc. 318), and Defendants Davis Transfer Co., Inc. and James White (Doc. 313). The three motions have been fully briefed and are ripe for disposition.

## BACKGROUND

In the early morning of July 3, 2006, a Lisa Express tractor trailer[1]

_____

[1] As we address below, ownership of the Lisa Express tractor trailer is disputed. Suffice it to say that the tractor trailer was owned by either Defendant Lisa Mattern ("Mattern") or by Defendant Lisa Express, Inc. ("Lisa Express"). We will refer to this vehicle as the "Lisa Express tractor

driven by Defendant Patrick C. Ludwig ("Ludwig") struck another tractor trailer owned by Defendant Swift Transportation, Inc. ("Swift") and driven by Defendant John E. Jones ("Jones") in the southbound lanes of Interstate 81 in Frailey Township, Schuykill County, Pennsylvania.[2] (Statement of Material Facts of Def. Lisa Mattern ¶¶ 1, 2 (Doc. 301); Statement of Material Facts of Defs. Swift Transportation Co., Inc., Sparks Finance Company, Inc., and John E. Jones ¶ 1 (Doc. 318)).

Jones had stopped along the interstate to relieve himself, north of a closed scenic overlook. (Jones Dep. (Doc. 318 at 22); Crash Report P1317178 (Doc. 327-3 at 9)). His tractor trailer was parked along the side of the interstate, five or ten feet from the edge of the road. (Jones Dep. (Doc. 327-2 at 32)). The fog was extremely thick. (Doc. 318 ¶ 2). Jones characterized the fog as the thickest he had ever seen in his life. (Jones Dep. (Doc. 327-2 at 30)). After getting back in his vehicle, Jones could not see in his mirror whether vehicles were traveling along the highway behind him, so he canted his tractor forty-five degrees to visually inspect the road behind him. (Jones Dep. (Doc. 327-2 at 31-33)). In addition to looking back down the road, Jones rolled down his window to listen for traffic. (Jones Dep. (Doc. 327-2 at 28)). Jones then proceeded down the shoulder of the road to build speed before putting on his turn signal and merging onto the road. (Jones Dep. (Doc. 327-2 at 6)).

Ludwig was also driving south-bound on Interstate 81 in his Lisa Express tractor trailer that morning. According to Ludwig, the fog that

---

trailer" or "Lisa Express vehicle" because this is how the parties and witnesses refer to it.

[2] At times, the court will refer to Defendants Swift, Sparks and Jones, collectively, as the "Swift defendants."

morning was patchy, and that in the thick portions visibility was reduced to two hundred yards.  (Ludwig Dep. (Doc. 327-4 at 4)).  Ludwig had been traveling at sixty-five miles per hour in the right-hand lane but upon reaching the sections of fog, he moved to the left-hand lane and reduced his speed.  (Ludwig Dep. (Doc. 327-4 at 4-5)).  As the fog thinned, Ludwig moved back to the right-hand lane.  (Id. at 5).  Then the fog became very heavy and Ludwig could only see two truck-lengths.  (Id. at 6).  He began to decelerate and move back to the left-hand lane, but struck Jones's Swift Tractor Trailer as it merged onto the highway.  (Id. at 6).  According to Lisa Express's safety director, Kimber Benshoff ("Benshoff"), Ludwig was driving fifty-five to sixty miles per hour when reached the fog and began to slow down.  (Insurance Summary (Doc. 327-7)).  According to Ludwig, Jones's Swift trailer was positioned such that its tractor was in the left-hand lane, its trailer was across the right-hand lane, though the tail of the trailer may still have been on the road's shoulder.  (Id. at 8-9).  Jones indicated to Trooper Chad Berstler that he was traveling at forty-five miles per hour when Ludwig struck him.  (Crash Report P1317178 (Doc. 327-3 at 7)).  Ludwig stated that he was traveling approximately sixty-five miles per hour when he struck Jones who had just pulled into traffic.  (Id. at 6).

Ludwig lost control of the Lisa Express tractor trailer and when it came to rest it was disabled across both southbound lanes.  (P1317178 at 9; Ludwig Dep. (Doc. 327-4 at 13)).  Jones was able to pull the Swift tractor trailer off of the interstate fifty yards farther south of the initial impact, at the southern end of the closed scenic overlook.  (P1317178 at 6, 9).

Shortly after the Lisa Express tractor trailer came to a stop in the roadway, it was struck by a tractor trailer owned by Third-Party Defendant Western Express ("Western Express") and operated by Third-Party Defendant Louis Cirino ("Cirino").  (307 ¶¶ 8, 9).  The Western Express

3

trailer came to a stop in the median, but the Lisa Express trailer remained across the southbound lands of the interstate.  (307 ¶¶ 9, 10).

A Pontiac Grand Am driven by Third-Party Defendant Kevin Olvany then struck the trailer portion of the Lisa Express trailer before coming to rest in the median between the north and southbound lanes.  (Crash Report P1317176 (Doc. 301-7)).  A Ford Ranger driven by Third-Party Defendant John Butler struck the cab portion of the Lisa Express trailer and immediately came to rest.  (Crash Report P1317177 (Doc. 301-8)).

A tractor trailer with tandem trailers driven by Third-Party Defendant Jeff Ganz and operated by Third-Party Defendant Old Dominion Freight Line, Inc. then struck the Lisa Express trailer, sheering it from the tractor. (Crash Report P1317180 (Doc. 318 at 79)).

A Volkswagon Passat driven by Third-Party Defendant John Owens struck the rear trailer of the Old Dominion vehicle.  (Crash Report P1317175 (Doc. 301-10)).  A GMC Jimmy, driven by Third-Party Defendant Jerry Rogers, struck the Passat head-on, and came to rest on top of the Passat.  (Crash Report P1317174 (Doc. 301-11)).  A Landstar Ranger trailerless-tractor driven by Third-Party Defendant David Jordan then struck the rear trailer of the disabled Old Dominion vehicle.  (Crash Report P1317173 (Doc. 301-12)).

With the exception of Jones, all of these drivers were issued citations for failing to operate their vehicles at a safe speed for the conditions in violation of 75 Pa. Conn. Stat. Ann. § 3361.  (Doc. 318 ¶¶ 13 - 21).  Each instance of a vehicle impacting another vehicle was documented in its own Crash Report.  (Trooper Berstler Dep. (Doc. 327-6 at 5)).  Trooper Chad Berstler's indicated that the initial collision between the Swift and Lisa Express tractor trailers occurred at 6:03 a.m.  (Crash Report P1317178 (Doc. 327-3)).

Other vehicles were able to stop safely behind– or among– this pileup.  (Crash Report P1317914; Minchhoff Dep. (Doc. 327-11 at 11)).  Corporal Christopher Minchhoff stated that twenty or more vehicles stopped behind the pileup.  (Minchoff Dep. (Doc. 327-11 at 11)).  Benshoff, who visited the crash site on behalf of Lisa Express, estimated that there were a half-dozen tractor trailers stopped behind the initial pileup.  (Benshoff Dep. (Doc. 327-8 at 5)).

Third-Party Defendant Paul Strausner ("Strausner"), driving a tractor trailer owned by Third-Party Defenant Mack Trucks, Inc., was able to stop his truck behind the vehicles in front of him.  (Strausner Dep. (Doc. 327-19 at 4)).  He indicated that in the worst portions of fog, he was lucky to see seventy-five feet, and that if he had known the conditions he would not have taken his truck up the mountain.  (Strausner Dep. (Doc. 304-12 at 3, 5).  When he hit the fog he decelerated until he was moving fifteen to twenty miles per hour, with his fog lights on and his hazard lights blinking.  (Id. at 6).  Strausner heard two reports on his CB radio of a bad accident on I-81 South, below Exit 112, which apparently was the accident described above, and that there were people and debris all over.[3]  (Id. at 8).  When Strausner reached the accidents he came to a stop thirty to forty feet behind the vehicle in front of him, leaving his engine running and his fog and hazard lights on.  (Strausner Dep. (Doc. 327-19 at 4).

Defendant James L. White ("White"), operating a Davis Transfer Co., Inc. ("Davis Transfer") tractor trailer, came upon Strausner's stopped truck

---

[3] Later, in addressing the parties' motions for summary judgment, we will, at times, refer to the first set of collisions as the "Swift accidents" and the subsequent collision as the "Burnett accident."  These devices are for clarity's sake alone, and are not meant to imply responsibility, fault, or any stance on whether the various collisions comprised a single event.

and struck it from behind. (White Dep. (Doc. 322-3 at 11)). White saw red taillights ahead, but never saw any hazard lights before his accident. (Id. at 10)). White was issued a citation for driving too fast for conditions. (Doc. 318 ¶ 23). White had falsified his logbook entry for the day of the accident because, under federal motor carrier regulations, he had driven too many hours without taking full sleep breaks. (White Dep. (Doc. 323-14 at 2)). White didn't verify if his own hazard lights were on, but recalls activating them. (White Dep. (Doc. 322-3 at 14, 28)). Strausner recalls seeing White's lights on, but states that White's hazard lights were not on. (Strausner Dep. (Doc. 322-7 at 6)). Strausner stated that he was only stopped for several seconds before White collided with him. (Strausner Dep. (Doc. 327-19 at 13)).

White and Strausner got out of the cabs of their trucks to check on one another and decided that Strausner would pull forward to separate the trucks. (Strausner Dep. (327-19 at 12)). Strausner then got back in his truck and pulled forward. (Id. at 13). He re-exited his cab and heard the impact of Angi Burnett's car. (Id.) White testified that he did not have time to set out the triangle reflectors with which his truck was equipped before his own truck was hit. (White Dep. (Doc. 322-3 at 17-18)).

At that point, Decedent Angi Burnett, driving a rented Nissan Altima, struck White's Davis Transfer Trailer Truck from behind. (Doc. 318 ¶ 24). White was standing next to Strausner's cab when he heard screeching and the impact of Burnett's vehicle. (White Dep. (Doc. 327-10 at 15); White Dep. (Doc. 304-11 at 3)). The impact was such that the Altima wedged itself under the ICC bar of the Davis Transfer Trailer, and lifted the trailer's

rear wheels off of the ground.[4]  (Strausner Dep. (Doc. 318 at 158); White
Dep. (Doc. 318 at 161)).  The ICC bar peeled back the Altima's hood and
impinged upon the "A pillar" of the front passenger side and continued into
the passenger compartment.  (Report of George C. Govatos, PhD, PE
(Doc. 327-9 at 4); Coroner Dutcavich Dep. (Doc. 327-22 at 3-4)).  Angi
Burnett was pinned against the ICC bar and, ultimately, asphyxiated.
(Certificate of Death (Doc. 327-28) (indicating cause of death as: (a)
traumatic compression asphyxia; (b) thoracic compression between
seat/steering wheel; (c) compartment intrusion by trailer bumper; and (d)
collision into rear of tractor-trailer)).  The coroner, David Dutcavich, noted a
right handprint on the fabric headliner of Burnett's vechicle, which is the
interior roof of the car.  (Coroner Dutcavich Dep. (Doc. 327-22 at 4)).

In the car with Angi Burnett were her two sons, C.B. and T.B.,
respectively ages twelve and nine years old on the date of the crash.  (C.B.
Medical Records (Doc. 327-30 at 1) (indicating birthdate); T.B. Medical
Records (Doc. 327-33 at 1) (indicating birthdate)).  C.B. was in the front
passenger seat next to his mother.  (T.B. Dep. (Doc. 327-32 at 5)).  T.B.
was asleep in the rear at the time of the impact, while C.B. as awake.
(T.B. Dep. (Doc. 327-32 at 3); C.B.  Dep. (Doc. 327-29 at 11; T.B. Medical
Records (Doc. 327-33 at 11)).  Angi Burnett spoke to her two sons and told
them she loved them.  (C.B.  Dep. (Doc. 327-29 at 3).  C.B. heard his
mother moaning as he was removed from the car.  (Id. at 5).  T.B. could tell

---

[4] An "ICC bar" is a name given to the rear impact guard or bumper of
a trailer and its name derives from the Interstate Commerce Commission,
the administrative agency which originally required such bumpers in the
1950s.  See Rapp v. Singh, 152 F. Supp. 2d 694, 696 (E.D. Pa. 2001)
(explaining the term and describing the administrative authority existing
prior to the National Highway Traffic Safety Administration).

his mother was trying to scream but was not able to. (T.B. Dep. (Doc. 327-32 at 4)). T.B. heard his mother asking for help. (Id.) As C.B. was transferred between ambulances at the scene he saw a blanket over his mother's face and knew she was dead. (Id. at 5, 7).

Trooper Minchoff recorded the time of the Burnett accident as 6:04 a.m., estimating that it occurred one minute after the Davis Transfer vehicle struck the Mack Truck vehicle, based apparently on the statement of Strausner or White that they had just gotten out of their trucks when Angi Burnett hit the Davis Transfer vehicle. (Minchoff Dep. (Doc. 328-16 at 3); Crash Report P1317914 (Doc. 327-12); Crash Report P1317162 (Doc. 318 at 148)).

Corporal Minchhoff estimated that the decedent had been traveling at a speed of seventy miles per hour, based upon the damage sustained by the vehicle. (Corporal Minchhoff Dep. (Doc. 327-11 at 4)). He stated that the decedent had been on the road for four or five hours, having left from Syracuse, New York, by the time of the accident at 6:04 a.m. (Corporal Minchoff Dep. (Doc. 304-13 at 3); Crash Report P1317914 (Doc. 327-12) (noting time of crash as 6:04 a.m.)). Corporal Minchhoff did not see any skid marks behind the Altima. (Doc. 318 ¶ 27). Corporal Minchhoff indicated that the decedent had failed to operate her vehicle at a safe speed for the conditions, in violation of 75 Pa. Conn. Stat. Ann. § 3361, though no citation was issued. (Crash Report P1317914 (Doc. 327-12); Minchhoff Dep. at 25, 65).

The Swift defendants' expert report by Alfred Cipriani, MSME, P.E., finds (1) that the Swift accidents were distinct from the Burnett accident; (2) that Jones had not pulled into traffic at a low speed, but had built up to forty-five miles per hour at the time he was hit by Ludwig; (3) that Ludwig was traveling too fast for conditions; (4) and that Angi Burnett caused the

final accident by traveling too fast for conditions. (SEA, Ltd. Report of June 15, 2010 (Doc. 318 at 31-54)).

The plaintiffs' expert report by Report of George C. Govatos, PhD, PE disputes the estimates of Trooper Minchoff and the Swift defendants experts' estimates of Angi Burnett's speed at the time of her accident with the Davis Transfer trailer. (Report of George C. Govatos, PhD, PE (Doc. 327-9 at 4-14)). Specifically, he contends that there is no accepted means of estimating the force of an impact from the severity of damage where the accident does not involve striking a flat surface like a wall. (Id.) Without a reliable estimate of force, speed cannot be determined. He states that in accidents like Angi Burnett's, where the bumper and front portion of the vehicle "underride" the point of impact, severe damage can be caused even at a speed of thirty-five miles per hour, because force is not distributed through the car's bumper, enginge block, and the car's internal frame. (Id. at 13).

White and Strausner removed the children from the Burnett vehicle. The boys were described as being scared, badly shaken, and crying. (White Dep. (Doc. 327-10 at 13); Strausner Dep. (Doc. 327-19 at 7)). An off-duty paramedic took the boys to her car. (Strausner Dep. (Doc. 327-9 at 8)). When responding paramedics arrived, they checked on the decedent but proceeded on to other vehicles, from which witnesses assumed decedent was dead. (Strausner Dep. (Doc. 327-19 at 9)).

C.B. and T.B. were taken to Good Samaritan Regional Medical Center by ambulance. (Doc. 318 ¶ 30). C.B. had pain in the side of his neck from his seat belt. (C.B. Dep. (Doc. 327-29 at 6)). T.B. had pain in his abdomen from his seat belt, a swollen contusion on his forehead, and nausea. (T.B. Medical Record (Doc. 327-33 at 9, 11, 14)). A CT Scan of T.B.'s abdomen and pelvis was normal and a CT Scan of T.B.'s brain

indicated only sinusitis.  (Id. at 18-19).

C.B. received psychological treatment from Dr. Isabella Rauh-Ivers over five visits, between September 13, 2006 and March 21, 2007.  (Doc. 18 ¶ 32).  Rauh-Ivers stated that, according to the father, Terry Burnett, C.B. was reluctant to talk about his mother's death and was afraid of driving near big trucks.  (Doc. 327 ¶ 30).  Rauh-Ivers indicated that the accident was psychotraumatic for C.B., and that C.B. would only speak tersely about his mother's death.  (Doc. 327 ¶ 31).  C.B. also received counseling from Copeland Avenue Associates over four visits, between December 15, 2008 and March 5, 2009.  (Doc. 327 ¶32).  He was diagnosed with adjustment disorder with mixed anxiety and depressed mood and bereavement.  (Id.)  C.B. did not find any of the treatment sessions helpful.  (C.B.  Dep. (Doc. 327-29 at 8)).

T.B. also received treatment from Dr. Rauh-Ivers.  (Doc. 327 ¶ 35).  T.B., like his brother, could speak tersely about his mother's death and was very reluctant to talk about anything stressful.  (Id. ¶ 36).  T.B. received counseling from Copeland Avenue Associates over three visits, between December 15, 2008 and March 5, 2009.  (Id. ¶ 37).  T.B. was diagnosed with adjustment disorder with mixed anxiety and depressed mood as well as bereavement.  (Id.)  Terry Burnett stated that his sons have no serious health issues.  (T.B. Dep.(Doc. 318 at 201)).

Minchoff stated that the distance between the accident sites was 200 yards.  (Minchhoff Dep. (Doc. 318 at 140).  Experts for the Swift defendants estimate that the accidents were separated by as much as 700 yards.  (SEA, Ltd.  Report of June 15, 2010 (Doc. 318 at 31-54)).  Elizabeth Cominio, who was able to stop within twenty feet of the first accident group estimated that it took two minutes to walk from the first accident group to the Burnett accident, estimating the distance to be one

quarter mile, which is 440 yards. (Cominio Dep. (Doc. 327-17 at 9)). Benshoff estimated the distance to be between one quarter and one half of a mile. (Benshoff Dep. (Doc. 327-8 at 5)). Strausner, however, indicated that later in the morning, when the fog lifted, he could see that the initial accident group was not much farther than a tractor trailer length from his vehicle. (Strausner Dep. (Doc. 327-19 at 11)).

Lisa Mattern was the manager of Lisa Express. (Interrogatory Answer #13 (Doc. 305-4 at 5)). Patrick Ludwig was hired by Lisa Express as a driver in 2004. (Employment Application of August 3, 2004 (Doc. 305-5)). Ludwig had various speeding violations and CDL violations across various states, and had his license suspended in 1994 for driving under the influence and another sixty-day suspension in 2002. (Ludwig Driving Record of August 3, 2004 (Doc. 305-7 at 1-2); Ludwig Dep. (Doc. 305-7 at 7)).

Kimber Benshoff was hired as Lisa Express's Safety Director on August 26, 2003. (Interrogatory Answer #13 (Doc. 305-4 at 5); Benshoff Dep. (Doc. 305-8 at 3)). Prior to 2003, Benshoff worked for twenty-three years at International Paper, ultimately as a lead floor supervisor. (Benshoff Dep. (Doc. 305-8 at 5-6)). Benshoff had assisted with International Paper's safety program but did not have any experience with Federal Motor Carrier Safety Regulations ("FMCSR") or receive any training on them prior to his job with Lisa Express. (Id.)    Prior to the July 3, 2006 accident, Benshoff had familiarized himself with the FMCSR and received training from the Pennsylvania Motor Truck Association. (Id.)

On August 31, 2006, Plaintiff Terry Burnett was appointed as the personal representative of the estate of Angi Burnett, his deceased wife. (Compl. ¶ 1 (Doc. 1-2). Plaintiff Terry Burnett, in his own right and as personal representative of the estate of Angi Burnett, deceased, and on

behalf of his two minor children, C.B. and T.B., filed a complaint in the United States District Court for the Eastern District of Pennsylvania on July 2, 2007. (Compl. (Doc.1-2)). Plaintiffs' complaint asserts two counts. Count I seeks damages under Pennsylvania's survival statute, 42 PA. CONN. STAT. ANN. § 8302. (Id.) Count II seeks damages under Pennsylvania's Wrongful Death Act, 42 PA. CONN. STAT. ANN. § 8301. (Id.) The action was originally brought against Defendants Swift Transportation, Inc., Sparks Finance Company, Inc., John Jones, Lisa Mattern, Patrick Ludwig, Davis Transfer, Co., Inc., James White, and Lisa Express (the "original defendants"). The action was transferred to this court on August 10, 2007 and assigned to the Honorable Thomas I. Vanaskie. (Transfer Order (Doc. 1)).

The original defendants filed answers and crossclaims. On January 24, 2008, the original defendants filed a Third-Party Complaint against Third-Party Defendants Western Express, Inc., Louis Cirino, Old Dominion Freight Line, Inc., James Owens, John P. Butler, Landstar Ranger, Inc., David M. Jordan, Jerry J Rogers, John Owens, Mack Trucks, Inc., Paul I Strausner, Kevin Olvany, and Terry Burnett as personal representative of Decedent Angi Burnett. (Joinder Compl. (Doc. 37)). The Third-Party Complaint raises claims of negligence and seeks contribution from the Third-Party Defendants, as joint tortfeasors. (Id.) The Third-Party Complaint was subsequently amended, such that Third-Party Defendant James Owens was dismissed from the action and Third-Party Defendant Jeff Ganz was added. (Am. Joinder Compl. (Doc. 46)).

On March 15, 2010, summary judgment was granted in favor of Third-Party Defendants Western Express and Louis Cirinio after oral argument and these parties were dismissed from the case. (Docs. 236, 272). On June 11, 2010, summary judgment was granted in favor of Third-

Party Defendants Landstar Ranger, David Jordan, John Owens, Old Dominion Freight Line, Jeff Ganz, and John Butler, and these parties were similarly dismissed.  (Docs. 276, 279, 285, 289, 295).

On June 21, 2010 this case was transferred to the undersigned. (See Doc. 299).  The instant motions for summary judgment, were filed by Defendant Lisa Mattern (Doc. 300), Defendants Davis Transfer Co., Inc. and James White (Doc. 313), and by Defendants Swift Transportation Co., Inc., Sparks Finance Company, Inc., and John E. Jones (Doc. 318) on July 1, 2010, August 9, 2010, and August 16, 2010, respectively.  The motions have been briefed and are ripe for disposition.

On December 8, 2010 the court dismissed the plaintiffs' claims against Defendants Davis Transfer Co., Inc. and James White, upon the approval of their Minors' Compromise and Settlement.  (Docs. 338, 339, 345, 346).  On this date, in separate orders, summary judgment has been granted in favor of Third-Party Defendant Jerry J. Rogers (Docs. 306, 350) and Third-Party Defendants Mack Trucks, Inc. and Paul I. Strausner (Docs. 316, 351), bringing the case to its present posture.

**JURISDICTION**

Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]").  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**LEGAL STANDARD**

13

Before the court are several motions for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

14

Defendant Lisa Mattern (Doc. 300), Defendants Swift Transportation, Inc., Sparks Finance Company, Inc. and John E. Jones (Doc. 318) and Defendants Davis Transfer Co., Inc. and James White (Doc. 313) move for summary judgment.  We will address each motion, in turn.

**1. Defendant Lisa Mattern's Motion for Summary Judgment**

Defendant Lisa Mattern ("Mattern") argues that she cannot be held personally liable, under theories of negligence, negligent entrustment, or negligent maintenance or repair, because she was not personally involved in the accident and is merely a shareholder in Lisa Express, Inc. ("Lisa Express").  She argues that there is no basis here for piercing the corporate veil to hold her liable in her personal capacity.  She claims that, although the truck was registered in her name, Lisa Express as the corporate entity was the true owner of the truck involved in the accident by way of a 2002 transfer which was not properly reflected in the truck's title or registration.  (See Notes to Financial Statement (Doc. 302-6) ("In 2001 the corporation was leasing tractors and trailers from the corporate shareholder[.]  In January of 2002, the corporation purchased the equipment it was formerly leasing from the shareholder.")).

The plaintiffs argue that Mattern admitted ownership of the truck in her answer to the complaint and that the relevant Crash Report shows Mattern as the owner.  (See Mattern Answer ¶ 21 (Doc. 6), Crash Report P1317178 (Doc. 327-3 at 9)).  The plaintiffs note that under Pennsylvania law, Mattern is the owner of the tractor trailer because she was the titleholder, citing 75 PA. CONN. STAT. ANN. § 102 (2006) ("'Owner.'  A person, other than a lienholder, having the property right in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security.").  They also note that

Mattern admitted being the manager of Lisa Express and admitted giving Ludwig permission to drive her truck, with knowledge of Ludwig's driving history. (Mattern Answer ¶ 22; Ludwig Driving Record of August 3, 2004 (Doc. 305-7 at 1-2)).

Having reviewed the record and the parties' arguments, we determine that genuine issues of material fact remain for trial on the plaintiffs' claim for negligent entrustment. Pennsylvania follows section 308 of the Second Restatement of Torts, which defines negligent entrustment; "[i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." See Ferry v. Fisher, 709 A.2d 399, 403 (Pa. Super. Ct. 1998). Regarding Mattern's argument that only Lisa Express, the corporate entity, should be liable, a reasonable jury could conclude that Mattern herself was the owner of the truck involved in the accident and that the truck was under her control. A reasonable jury could also conclude, that Mattern– as owner, or as manager of Lisa Express– knew or should have known that Ludwig would likely use the truck in a way that would create an unreasonable risk of harm to others, based on Ludwig's driving record. As such, it would be improper to dismiss either Mattern or Lisa Express, and Mattern's motion for summary judgment on plaintiffs' claim of negligent entrustment will be denied.

The plaintiffs do not rebut Mattern's arguments on negligence and negligent maintenance or repair, however. We find that, upon the record, there is no genuine issue of material fact as to whether Mattern was involved in the accidents at issue or whether there was any problem with the Lisa Express truck's operating condition. Accordingly, there are no

16

facts upon which liability can attach to Mattern for negligence or negligent maintenance or repair and summary judgment will be granted in favor of Mattern on these claims.

## 2. Defendants Swift Transportation, Inc., Sparks Finance Company, Inc. and John E. Jones's Motion for Summary Judgment

Defendants Swift Transportation, Inc., Sparks Finance Company, Inc. and John E. Jones move for summary judgment on the plaintiffs' claims for negligence and negligent infliction of emotional distress. We will address each cause of action in turn.

## A. Negligence

Defendants Swift Transportation, Inc. ("Swift"), Sparks Finance Company, Inc. ("Sparks") and John E. Jones ("Jones") argue that the Swift truck accident was not a proximate cause of the Burnett accident because the time and distance between the accidents severed the chain of causation. They note that several vehicles were able to safely come to a stop after the Swift accident and that Jones, the Swift driver, was not cited for a traffic violation. Finally, they rely on their expert report which places fault with Ludwig and Burnett. The plaintiffs respond that Jones, despite not having been cited for a traffic violation, negligently pulled into traffic under the conditions. They further contend that the Swift defendants were a proximate cause of injuries. They argue that the various accidents comprised a single accident, which Jones had set in motion. They argue that the time and distance between the Swift accident and the Burnett accident were relatively short.

Under Pennsylvania law, "[a] prima facie negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual

17

loss or damage." Krentz v. Consol. Rail Corp., 910 A.2d 20, 27 (Pa. 2007).[5] It is not sufficient that the defendant's breach of his duty caused the injury, but also that the breach was a proximate cause of the injury. Vattimo v. Lower Bucks Hosp., Inc., 465 A.2d 1231, 1233 (Pa. 1983). A breach of duty causing injury is a proximate cause when the breach "was a substantial factor in bringing about the plaintiff's harm." Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978). Pennsylvania follows the Second Restatement of Torts, which offers considerations in determining whether a breach was a substantial factor:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
> (c) lapse of time.

RESTATEMENT (SECOND) OF TORTS § 433 (1965).

"The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence." Hamil, 392 A.2d at 1280 (citing RESTATEMENT (SECOND) OF TORTS § 432).

Addressing the facts of this case, we determine that a reasonable jury could find that Defendants Swift, Sparks, and Jones were a proximate cause of the plaintiffs' injuries. Initially, a reasonable jury could find that if not for Jones' actions in merging onto the highway under the existing conditions, there may have been no initial or subsequent accidents. Thus, it cannot be said that– taking the evidence in a light most favorable to the

---

[5] The Swift defendants focus their arguments on the proximate cause element of the negligence cause of action. Accordingly, we do not analyze the other elements.

18

plaintiffs– "plaintiff's injury would have been sustained even in the absence of the actor's negligence." Hamil, 392 A.2d at 1280. A reasonable jury could also conclude, based on the record, that Jones created a series of forces that were continuous and active up until the time of Burnett's accident. See RESTATEMENT (SECOND) OF TORTS § 433(b). A reasonable jury could find that the situation allegedly caused by Jones– an accident between his tractor trailer and that of Lisa Express which rendered the travel lanes and shoulder of the highway unpassable in extremely thick fog was not "harmless unless acted upon by other forces." Id. A reasonable jury could conclude that the nine collisions comprised a single event, which spanned a distance of several truck-lengths and lasted only a few minutes.[6] Given that a reasonable jury could find such facts, we cannot conclude as a matter of law that Jones's alleged breach was an insubstantial factor in the Burnett accident. See Brown v. Phila. Coll. of Osteopathic Med., 760 A.2d 863, 868 (Pa. Super. Ct. 2000) (proximate cause is question of law to be determined before question of actual causation may be put to jury). We find that a genuine issue of material fact exists as to whether Jones proximately caused the plaintiffs' injuries. Defendants Swift Transportation, Inc., Sparks Finance Company, Inc. and John E. Jones's motion for summary judgment on plaintiffs' claim

---

[6] The time of each collision is not clear from the record. The various crash reports from the Swift accidents list the accidents as happening at 6:03 a.m. It is possible that the accidents occurred over a greater stretch of time. It is also possible that the first accident occurred earlier than 6:03 a.m., since that is also listed as the time that the State Police dispatched officers to the scene. Alternatively, as the record facially indicates, it is possible that the Swift accidents all occurred at 6:03 a.m. and the State Police were dispatched that same minute, with the Burnett accident occurring one minute later at 6:04 a.m.

for negligence will be denied.

## B. Negligent Infliction of Emotional Distress

The Swift defendants also argue that they are not liable for negligent infliction of emotional distress because T.B. was asleep when Angi Burnett struck the Davis trailer and, therefore, could not have actually observed the traumatic event. They argue that is insufficient for T.B. to have observed the effects of the accident. Additionally, they argue that C.B. and T.B. have only suffered temporary and mild distress, which is insufficient to state a claim for negligent infliction of emotional distress. The plaintiffs respond that it is sufficient that T.B. was present for the accident and it saw its immediate effects. They also argue that C.B. and T.B. suffered emotional distress.

A claim for negligent infliction of emotional distress is based on section 313 of the Second Restatement of Torts:

> (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
> (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
> (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.
> (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

RESTATEMENT (SECOND) OF TORTS § 413. A plaintiff bringing a cause of action for negligent infliction of emotional distress must establish the elements of a basic negligence cause of action, as well. <u>Toney v. Chester</u>

County Hosp., 961 A.2d 192, 198 (Pa. Super. Ct. 2008).[7]

There are four sorts of scenarios due to which a plaintiff may be eligible to bring a claim for negligent infliction of emotional distress: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." Toney, 961 A.2d at 197 -198 (citing Doe v. Philadelphia Community Health Alternatives AIDS Task Force, 745 A.2d 25, 26 (Pa. Super. Ct. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001)).

The parties seem to agree that the fourth type of claim is most relevant to this case. It has three elements:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;
> (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and
> (3) Whether plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship.

Love v. Cramer, 606 A.2d 1175, 1177 (Pa. Super. Ct. 1992) (citing Sinn v. Burd, 404 A.2d 672, 685 (Pa. 1979). "Recovery is further limited by the requirement that the person seeking the damages must suffer physical injury as a result of actually witnessing the harm to the close relative." Love v. Cramer, 606 A.2d 1175, 1177 (Pa. Super. Ct. 1992) (citing Mazzagatti v. Everingham by Everingham, 516 A.2d 672 (Pa. 1986)); see

_____

[7] We have determined, above, that the plaintiffs have presented genuine issues of material fact on their predicate claim for negligence.

21

<u>also</u> <u>Toney</u>, 961 A.2d at 200.[8]

Regarding the second element, some courts have allowed claims in situations where the plaintiff personally witnessed only the resulting harm to a close relative.  <u>See</u>, <u>e.g.</u>, <u>Bliss v. Allentown Public Library</u>, 497 F. Supp. 487 (D.C. Pa. 1980) (denying motion to dismiss on negligent infliction of emotional harm where mother heard sculpture fall upon her child, although mother did not see exact moment of accident); <u>Pearsall v. Emhart Industries, Inc.</u>, 599 F. Supp. 207 (D.C. Pa. 1984) (upholding jury verdict on infliction of emotional distress claim against smoke alarm manufacturer where mother arrived home to see firefighters battling fire and later stood next to bodies of deceased husband and daughter before they were taken from scene); <u>Krysmalski by Krysmalski v. Tarasovich</u>,  622 A.2d 298 (Pa. Super. Ct. 1993) (upholding jury verdict on negligent infliction of emotional distress claim where mother was in check-out line of supermarket when her children were struck by driver in parking lot).

Addressing T.B.'s perception of the accident, the record indicates that he was sleeping when the accident began.  A reasonable jury could conclude the he was awoken by the impact itself and experienced it through all of his faculties from that point forward while strapped into his seat and watching his mother struggle for life, "as contrasted with learning of the accident from others after its occurrence."  <u>Love</u>, 606 A.2d at 1177. In determining that a genuine issue of fact exists as to whether T.B. had an adequately contemporaneous perception of the traumatic event, we are guided by the principle that permits this cause of action in the first place: it

---

[8] The parties do not dispute the first or third factors: C.B. and T.B. were the children of Angi Burnett and were in the car at the time of the accident.

22

is forseeable that a child amidst the wreckage of a crushed car– whether awake or asleep at the moment before impact– who watches and listens as his mother bleeds and asphyxiates in the seat in front of him, will suffer emotional distress.  See Sinn, 404 A.2d at 686 (establishing foreseeability as touchstone for negligent infliction of emotional distress claim).[9]

The fourth factor, requiring a physical harm attendant to the plaintiff's emotional harm, stems from section 436A of the Second Restatement of Torts, which provides: "[i]f the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."  In drawing the line, one court stated, "[t]emporary fright, nervous shock, nausea, grief, rage, and humiliation if transitory are not compensable harm; but, long continued nausea or headaches, repeated hysterical attacks or mental aberration are compensable injuries."  Armstrong v. Paoli Memorial Hosp., 633 A.2d 605, 609 (Pa. Super. Ct. 1993).

Regarding C.B.'s physical manifestation of emotional injury, a reasonable jury could conclude from Dr. Rauh-Ivers that C.B. had been psycholgically traumatized by the accident, had an adjustment disorder and some level of depression.  C.B. received professional psychological treatment and counseling, over the course of nine visits, from September of 2006 to March 2009, a period of two and one half years.  A reasonable jury could also conclude that T.B. had an adjustment disorder and some level of depression and anxiety.  T.B., also received psychological

---

[9] The Swift defendants do not dispute C.B.'s perception of the accident.

treatment and counseling over the same two and a half year period.

We determine that there is sufficient evidence in the record for a reasonable jury to conclude that C.B. and T.B. suffered physical injuries which were not merely transitory.  Accordingly, Defendants Swift, Sparks, and Jones's motion for summary judgment on C.B. and T.B.'s claim for negligent infliction of emotional distress will be denied.

**3. Defendants Davis Transfer Co., Inc. and James White's Motion for Summary Judgment**

Defendants Davis Transfer Co., Inc. ("Davis Transfer") and James White ("White") argue that they cannot be found negligent because they were not a proximate cause of Angi Burnett's accident.[10]  They argue that they were not substantial factors in bringing about the accident.  See RESTATEMENT (SECOND) OF TORTS § 433.  Instead, they point to (1) the Swift Accident, (2) the weather, and (3) Angi Burnett's alleged speed as other factors which produced the harm.  They also argue that Angi Burnett would have crashed into the Davis Transfer trailer regardless of whether White was negligent in colliding with the Mack Truck trailer ahead of it because it would have been fully stopped either way.

The plaintiffs, along with the Swift defendants, argue, in opposition, that Burnett's collision was not inevitable.  They point to testimony indicating that White failed to turn on his flashers, failed to lay out reflective triangles, and violated logbook regulations by improperly logging his hours spent driving and sleeping.  See 49 C.F.R. §§ 392.22 (a), (b) (2010) (describing when hazard flashers and warning devices must be employed).

_____

[10] The legal requirements for a negligence cause of action, including proximate cause, is stated above with respect to the Swift defendants' motion for summary judgment and will not be recited here.

24

The plaintiffs argue that had White been more concerned about setting out reflective triangles to warn those approaching, rather than separating the two tractor trailers, the Burnett accident might have been avoided. They argue that these facts create a genuine issue of material fact.

A reasonable jury could conclude that, although White would have been stopped in traffic more or less where it was, whether he struck Strausner's Mack trailer or not, White failed to use his flashers and reflective signals when stopped in the roadway and that this failure constituted a breach of the standard of care he owed. Given that a reasonable jury could find such facts, we cannot conclude as a matter of law that White's alleged breach was an insubstantial factor in the Burnett accident. Accordingly Davis Transfer and White's motion for summary judgment will be denied.

**CONCLUSION**

For the reasons stated above, the motions for summary judgment of Defendants Swift Transportation, Inc., Sparks Finance Company, Inc. and John E. Jones (Doc. 318), and Defendants Davis Transfer Co., Inc. and James White (Doc. 313) will be denied. Defendant Lisa Mattern's motion for summary judgment (Doc. 300) will be denied with respect to the plaintiffs' claim for negligent entrustment, but granted with respect to negligence and negligent maintenance or repair. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TERRY BURNETT, *in his own right and as* :     3:07cv1490
*personal representative of the estate of* :
*Angi Burnett, deceased, and on behalf of* :     (Judge Munley)
*his two minor children, C.B. and T.B.,* :

        **Plaintiff** :

            **v.** :

SWIFT TRANSPORTATION, INC.; :
SPARKS FINANCE COMPANY, INC.; :
JOHN E. JONES; LISA MATTERN; :
PATRICK C. LUDWIG; DAVIS :
TRANSFER CO., INC.; JAMES L. WHITE :
and LISA EXPRESS, :

        **Defendants** :

            **v.** :

JAMES OWENS; KEVIN OLVANY and :
TERRY BURNETT, :

        **Third-Party Defendants** :

## ORDER

    **AND NOW**, to wit, this  8th  day of February 2011, upon consideration of the defendants' motions for summary judgment, it is HEREBY **ORDERED** that:

•    the motion for summary judgment of Defendant Lisa Mattern (Doc. 300) is **DENIED** with respect to the plaintiffs' claim for negligent entrustment and **GRANTED** with respect to the plaintiffs' claims for negligence and negligent maintenance and repair;

•    the motion for summary judgment of Defendants Swift Transportation, Inc., Sparks Finance Company, Inc. and John E. Jones (Doc. 318) is **DENIED**,

•    the motion for summary judgment of Defendants Davis Transfer Co., Inc. and James White (Doc. 313) is **DENIED**.

BY THE COURT:

s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**